**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2083-23

PARAG MEHTA,

    Plaintiff-Respondent,

v.

ASHOK MISHRA,

    Defendant-Appellant.

_____

Submitted May 6, 2025 – Decided July 16, 2025

Before Judges Gilson and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2059-20.

Ashok Mishra, appellant pro se.

Parag Mehta, respondent pro se.

PER CURIAM

This appeal arises from a landlord-tenant dispute over the failure to pay rent during the COVID-19 pandemic. Defendant Ashok Mishra appeals from the January 29, 2024 final judgment order entered after trial, awarding plaintiff

damages for unpaid rent losses in the amount of $21,900.00, legal fees of $9,215.00, and costs of $410.50. Defendant contends that the trial court erred primarily by not considering the impact of the "extraordinary and unprecedented circumstances" of the COVID-19 pandemic on the lease agreement which altered his obligations under the lease.

We affirm in part and vacate in part. We discern no error in the trial court's finding that defendant owed back rent in the amount of $21,900. We, however, vacate the attorney fee award in plaintiff's favor and remand the matter for the court to make the requisite findings pursuant to Rule 1:7-4 and RPC 1.5(a).

I.

Plaintiff owns and rents out a residential condominium in Jersey City. On September 1, 2019, plaintiff rented the property to defendant for a one-year term ending on August 31, 2020. According to the lease, monthly rent was $3,550, with a $100 late fee. Defendant paid rent through March 2020, although he paid the March rent ten days late.

Plaintiff sent defendant several notices advising him of the outstanding rent balance. Defendant does not dispute that he did not pay rent from April through August 2020.

A-2083-23

Around May 2020, plaintiff tried to find another renter to take over the lease because defendant had not been paying rent. Plaintiff asserted that defendant refused to vacate the apartment and would not permit plaintiff to show the apartment to prospective tenants. Therefore, plaintiff was not able to rent the apartment to mitigate the lost rent. Defendant moved out of the apartment on August 31, 2020.

In June 2020, plaintiff filed a complaint seeking unpaid rent for five months, plus the late fee for the March 2020 late rental payment, and attorney's fees. A bench trial occurred on November 1, 2023; only plaintiff and defendant testified.

Even though defendant admitted he did not pay rent for five months, he asserted that his security deposit was used for August's rent. Plaintiff did not disagree that defendant's security deposit was applied towards August's rent. However, plaintiff sought lost rent for September 2020 because defendant vacated on August 31, 2020, preventing plaintiff from renting the apartment for September 2020.

Defendant asserted that but for the pandemic, he would have continued making the monthly rent payments. He testified that he tried to work out an agreement for partial payments, but plaintiff refused. Defendant did not testify

3

that he sought to terminate the lease agreement as provided for in the lease, nor did he offer any proof of a request to terminate the lease.

The trial court found plaintiff credible and that defendant, by his own admission, owed rent for April through August 2020. Agreeing with plaintiff's arguments, the trial court awarded rent through August 2020, permitting plaintiff to apply defendant's security deposit to September's rent because defendant prevented plaintiff from getting a new tenant. The court also concluded that defendant owed the late fee for March 2020 and attorney's fees.

At the close of trial, plaintiff's counsel represented that attorney's fees to date totaled $9,625. The trial court gave defendant time to respond to the attorney's fees request. On January 3, 2024, the trial court issued an opinion, finding the attorney's fees reasonable and necessary. On January 29, 2024, the trial court entered final judgment in plaintiff's favor, awarding damages for unpaid rent losses in the amount of $21,900.00; legal fees in the amount of $9,215.00; and costs of $410.50. This appeal followed.

Defendant makes various arguments in favor of reversal, contending the trial court erred by failing to: (1) consider the doctrines of frustration of purpose and impossibility; (2) adequately consider the CARES Act protections; (3) consider the impact of the COVID-19 pandemic on the lease; (4) address the

4

inequities resulting from the pandemic and the subsequent delays; and (5) adequately consider the impact of the COVID-19 pandemic when awarding legal fees and costs.

II.

"We review the trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard." D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013).

> Final determinations made by the trial court sitting in a non-jury case are subject to a limited and well-established scope of review: we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.
>
> [Ibid. (alteration in original) (quoting Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011)) (internal quotation marks omitted); accord Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 483-84 (1974).]

A trial court's legal determinations, however, are reviewed de novo. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial

court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

It is indisputable that the COVID-19 pandemic caused unprecedented disruption and devastation in the lives of so many New Jerseyans. In response, on March 19, 2020, Governor Phillip Murphy signed Executive Order 106, which prevented property owners from evicting tenants during the COVID-19 pandemic. Exec. Order No. 106 (Mar. 19, 2020), 52 N.J.R. 549(a) (Apr. 6, 2020). During the eviction moratorium, landlord-tenant matters were held in abeyance due to the pandemic. The Legislature recognized that this moratorium, and other measures, have "caused severe economic difficulties for landlords and tenants alike." N.J.S.A. 52:27D-287.7. However, landlords were not prohibited from later seeking back rent.

A. Doctrines of Frustration of Purpose and Impossibility.

Defendant contends the trial court erred in not applying the doctrines of frustration of purpose and impossibility to perform. In that regard, he asserts the trial court failed to determine if the lease remained feasible and fair under the extraordinary circumstances of the pandemic. Defendant asserts he was unable to use the property "due to lockdowns and restrictions imposed on

movement and business operations," which frustrated the primary purpose of his lease agreement.

"The respective concepts of impossibility of performance and frustration of purpose are, in essence, doctrinal siblings within the law of contracts." JB Pool Mgmt., LLC v. Four Seasons at Smithville Homeowners Ass'n, Inc., 431 N.J. Super. 233, 245 (App. Div. 2013).

> Both doctrines may apply to certain situations in which a party's obligations under a contract can be excused or mitigated because of the occurrence of a supervening event. The supervening event must be one that had not been anticipated at the time the contract was created, and one that fundamentally alters the nature of the parties' ongoing relationship.
>
> [Ibid.]

"Both the impossibility and frustration doctrines are concerned with [a]n extraordinary circumstance [that] may make performance [of a contract] so vitally different from what was reasonably to be expected as to alter the essential nature of that performance." Ibid. (alterations in original) (citation and internal quotation marks omitted). "The doctrines stem from the concept of an implied condition within a contract." Ibid.

"Frustration of purpose arises when 'the obligor's performance can still be carried out, but the supervening event fundamentally has changed the nature of

the parties' overall bargain.'" Capparelli v. Lopatin, 459 N.J. Super. 584, 606 (App. Div. 2019) (quoting JB Pool Mgmt., LLC, 431 N.J. Super. at 246). "The frustration must be so severe that it is not fairly to be regarded as the risks that [the party invoking the doctrine] assumed under the contract." Id. at 606-07 (alteration in original) (quoting JB Pool Mgmt., LLC, 431 N.J. Super. at 247). "Relief from performance of contractual obligations on the theory of frustration of purpose 'will not be lightly granted; the evidence must be clear, convincing[,] and adequate.'" Id. at 607 (alteration in original) (quoting A-Leet Leasing Corp. v. Kingshead Corp., 150 N.J. Super. 384, 397 (App. Div. 1977)).

> By comparison, under the related doctrine of impossibility or impracticability of performance, a party is excused from having to perform his contract obligations 'where performance has become literally impossible, or at least inordinately more difficult, because of the occurrence of a supervening event that was not within the original contemplation of the contracting parties.
>
> [Ibid. (quoting JB Pool Mgmt., 431 N.J. Super. at 246).]

The rented property subject to the lease agreement was a residential condominium and was not used for business purposes. Defendant claims that the government-mandated shutdown rendered his leased apartment unusable for its intended purpose as a residential rental unit. However, he fails to describe how the apartment was unusable or provide any supporting evidence for this

self-serving assertion. Defendant does not dispute that he continued to live in the apartment and received notices from plaintiff at this address. Even if defendant was, as so many tenants were, experiencing financial hardship during the pandemic, these circumstances alone do not establish defendant's claim that performance under the lease agreement had become impossible. Therefore, the record does not demonstrate that the trial court erred in not applying these doctrines to these circumstances.

B. The CARES Act.

Defendant contends the trial court erred by disregarding plaintiff's failure to comply with the CARES Act. Defendant cites to "Section 4024"[1] of the Act, arguing that it "imposed a temporary moratorium on legal/eviction actions, which prohibited landlords from filing legal eviction proceedings for nonpayment of rent" and prohibited landlords from charging tenants late fees, penalties or other related charges. Defendant also contends that "the Act and Statutes require[] landlords to file an Affidavit of Compliance/Certifications in any legal/eviction action filed between March 27, 2020 and July 25, 2020."

15 U.S.C. § 9058(b) of the CARES Act states, in pertinent part:

---

[1] Defendant incorrectly cites to § 4024 of the CARES Act. The correct citation for the statute relief upon by defendant is 15 U.S.C. § 9058.

Moratorium. During the 120-day period beginning on March 27, 2020, the lessor of a covered dwelling may not—

(1) make, or cause to be made, any filing with the court of jurisdiction to initiate a legal action to recover possession of the covered dwelling from the tenant for nonpayment of rent or other fees or charges; or

(2) charge fees, penalties, or other charges to the tenant related to such nonpayment of rent.

This statute established a temporary moratorium on eviction proceedings against tenants who have not paid rent. Because plaintiff's complaint is not an eviction action but rather, a complaint for unpaid rent, the provisions of the Act upon which defendant relies do not apply.

Without citing to any specific provision, defendant contends that "[t]he Act and Statutes" require landlords to file an affidavit of compliance confirming the legal eviction action was not subject to the CARES Act. Again, because plaintiff's complaint was not an eviction action, any such requirement would not apply.

C. Impact of COVID-19 On the Lease Agreement.

Defendant argues the trial court failed to consider the impact of the unprecedented pandemic on the parties' lease agreement. Defendant's assertions are not supported by the record.

10

A-2083-23

As noted previously, the record does not support defendant's contention that he was unable to continue to live in the apartment that he rented from plaintiff. Therefore, there is no support in the record for his assertion that the "government restrictions" resulted in him being "unable to access or use the leased property in the manner intended." Defendant also argues that the delays in proceeding to trial "resulted in the deterioration of evidence and a loss of critical documentation." At the same time, defendant argues there was inadequate time allocated for trial and a lack of expert testimony on the legal and economic effects of the pandemic on contract enforcement. Defendant did not raise these arguments before the trial court, did not request an adjournment, nor did he seek to present expert testimony. We decline to consider issues not raised before the trial court when those issues clearly could have been raised and do not go to the jurisdiction of the trial court or concern matters of substantial public interest. J.K. v. N.J. State Parole Bd., 247 N.J. 120, 138 n.6 (2021).

The trial court correctly cited to Executive Order 106, which prohibited a landlord from evicting a tenant during the pandemic for failure to pay rent. Exec. Order No. 106, 52 N.J. R. 549(a). However, the court also correctly noted that a landlord was not prohibited "ultimately [from] collect[ing] rent." We agree with the trial court's legal conclusion that "collecting rent and eviction are

two different issues." Therefore, we discern no error by the trial court in its findings of fact nor any legal error in the conclusion it drew from those facts, resulting in a judgment for back rent and a late fee defendant owed to plaintiff.

Although not identified as a legal argument in support of reversal, defendant claims that the lease was a "tenancy at will" and claims he advised plaintiff in March 2020 of his desire to terminate the lease. Again, this argument was not raised before the trial court. Nonetheless, we will address it for the sake of completeness.

Defendant relies on paragraph ten of the lease agreement which provided:

> MUTUAL AGREEMENT ON TERMINATION: The TENANT and the LANDLORD may mutually agree to terminate the lease at any time. A signed letter by TENANT and LANDLORD can affect the termination of this lease and must set forth the conditions of the termination. The TENANT or LANDLORD must provide at least [sixty] days' notice to the other party requesting a termination. As part of a TENANT requested termination, and if subsequently agreed by the LANDLORD, the LANDLORD reserves the right to retain 1 month of security deposit to pay for any lost rent.

This provision does not support defendant's claim. Instead, it provides for a mutual termination of the lease. Moreover, if the parties had no lease agreement and defendant was a tenant at will, N.J.S.A. 2A:18-56(a), which amended the

common law "tenancy at will," required defendant to provide plaintiff with three-months' notice to quit:

> No judgment for possession in cases specified in paragraph "a." of section 2A:18-53 of this Title shall be ordered unless:
>
> > a. The tenancy, if a tenancy at will or from year to year, has been terminated by the giving of [three] months' notice to quit, which notice shall be deemed to be sufficient[.]
>
> [N.J.S.A. § 2A:18-56(a); see also Gretkowski v. Wojciechowski, 26 N.J. Super. 245, 249 (App. Div. 1953) ("We parenthetically note that by force of what used to be our Landlord and Tenant Act and is now N.J.S. 2A:18-56, the requisite notice to quit is three months instead of six.").]

The record also does not support defendant's purported attempt to terminate the lease, nor his assertion that he was a tenant at will and could terminate the lease at any time. Contrary to defendant's assertion, the court found plaintiff's testimony credible regarding defendant's failure to cooperate with plaintiff's efforts to show the apartment and re-rent it to mitigate lost rent damages. The trial court's findings are supported by the evidence and, therefore, we discern no grounds for not accepting those findings.

13

D.  Attorney's Fees.

Following trial, the trial court issued a one-page opinion, granting plaintiff's request for an award of attorney's fees and finding the "overall total fees requested were reasonable, necessary and appropriate in connection with this matter . . . ."[2]  The January 29, 2024 order awards legal fees in the amount of $9,215 and costs in the amount of $410.50.  Defendant contends the trial court erred in awarding attorney's fees and costs without considering the impact the pandemic had on defendant's financial situation and the "overall fairness of the award."  Defendant also asserts the award was excessive and unjust.

We review a trial court's decision regarding attorney's fees under an abuse of discretion standard.  Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009).  A counsel fee "award 'will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion.'"  Hansen v. Rite Aid Corp., 253 N.J. 191, 211-12 (2023) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).  Rule 4:42-9(b) requires "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by

---

[2]  The record does not include plaintiff's counsel's certification of services in support of an award of counsel fees.

RPC 1.5(a)[3]."  Therefore, in considering the reasonableness of the fees sought, a trial court must determine the lodestar by evaluating the factors set forth in RPC 1.5(a).  See Rendine, 141 N.J. at 319.

Here, the trial court did not analyze the RPC 1.5(a) factors when considering plaintiff's counsel fee application.  The court concluded that the fees were reasonable and appropriate, noting only that the certification included "fairly extensive [p]retrial work" for a one-day, two-witness trial.  The trial court did not provide further reasoning to support its findings as to why extensive pretrial work was reasonable and necessary and to support its findings as to counsel's hourly rate.

Because there was no analysis, we vacate the portion of the order granting an award of attorney's fees and costs and remand.  We direct the trial court to

---

[3] The RPC 1.5 factors include:  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent.

A-2083-23

set forth a factual basis for its conclusions, including an analysis of the RPC 1.5(a) factors in compliance with <u>Rule</u> 1:7-4 and <u>Rule</u> 4:42-9.

Affirmed in part; vacated and remanded in part for further proceedings consistent with this decision. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2083-23